IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHNNY BATES and                    *
PATRICIA MIDDLETON BATES,           *
                                    *
        Plaintiffs,                 *
                                    *       CIVIL ACTION FILE
v.                                  *
                                    *       NO. 1-09-CV-03280-AT
MICHELIN NORTH AMERICA, INC.,       *
                                    *
        Defendant.                  *

## PLAINTIFFS' RESPONSE TO MICHELIN NORTH AMERICA INC.'S MOTION TO EXCLUDE TESTIMONY OF ALLAN KAM

        To bolster its defense, Michelin wants to clothe itself in the federal

regulatory framework applicable to tires.  At the same time, Michelin attempts to

exclude plaintiffs' evidence establishing the scope of that regulatory framework

and establishing what "compliance" with the regulations does, and does not,

signify.  Specifically, Michelin has both argued and adduced evidence that the

subject tire "complied" with Federal Motor Vehicle Safety Standard ("FMVSS")

109, a regulation promulgated by the National Highway Traffic Safety

Administration ("NHTSA") over thirty years before the subject tire was built.[1]

Yet, by asking the Court to exclude the testimony of NHTSA regulatory expert

Allan Kam, Michelin attempts to prevent plaintiffs from rebutting its "compliance"

argument with evidence that will show what compliance with FMVSS 109 really

signifies.

The truth is that compliance with the FMVSS means very little: the FMVSS

are "minimum standard[s]" and "do[] not exempt a person from liability at

common law."  49 U.S.C. § 30102(a)(9); 49 U.S.C. § 30103(e).  Even Michelin's

expert Joseph Grant has admitted that "a tire could . . .  comply with the Federal

Motor Vehicle Safety Standards and still have a manufacturing defect."  (Grant

dep. at 147/18-22, collectively attached as Ex.2).  To counter Michelin's reliance

on the FMVSS, therefore, Mr. Kam intends to testify about (1) the nature of the

FMVSS regulatory scheme, (2) the historical development of the FMVSS, and (3)

---

[1] FMVSS 109 is the minimum standard that NHTSA promulgated in 1967 for
passenger tires.  (Kam rpt. at 7, attached as Ex. 1.)  The version of FMVSS 109
that applied to the subject tire required, among other things, mounting the tire on a
"test wheel" and running it at various speeds under various loads.  49 C.F.R. §
571.109 at S5 (2007).  In 2007, NHTSA effectively replaced FMVSS 109 with
FMVSS 139, citing the "outdated performance requirements" of FMVSS 109 as
one reason for the replacement.  68 Fed. Reg. 38116, 38119; Kam rpt. at 7, Ex. 1.
One reason that FMVSS 109 had become "outdated" was that was that it was
designed to test "bias" tires (which constituted 99% of US passenger tires in 1967),
not modern "radial" tires (which constituted over 95% of passenger tires in the US
and Europe in 2007).  68 Fed. Reg. at 38119.

what "compliance" does, and does not, signify.  Mr. Kam's testimony will thereby

help the jury understand what "compliance" with FMVSS really means.

## I.   AS MANY COURTS HAVE RECOGNIZED, ALLAN KAM IS WELL-QUALIFIED TO TESTIFY.

Allan Kam is one of the nation's preeminent experts on NHTSA's

regulatory framework and has been repeatedly hired as a consultant by both

consumers and automotive product manufacturers.  (*See* Kam. dep. at 57/16-21,

collectively attached as Ex. 3.)  In addition to consulting with consumers in

litigation, he has consulted with motor vehicle manufacturers such as Honda,

Mazda, Hyundai, Suzuki, and Mack Truck.  (*Id.* at 59/2-10; Kam report at 2-3, Ex.

1.)  He has also worked for motor vehicle equipment manufacturers.  (Kam dep. at

65/17-24, Ex. 3.)  Among tire manufacturers, Mr. Kam has worked with Firestone

Tire, Cooper Tire, Pirelli Tire, and Yokahoma Tire on regulatory issues.  (*Id.* at

61/6-7.)  In the course of his consulting work as an expert on NHTSA regulatory

issues—which constitutes only a part of his practice—Mr. Kam has faced a series

of *Daubert* motions filed by manufacturers who want to wrap themselves in the

body of "compliance" with the "minimum standard" of the FMVSS, but who want

to prevent the Court and jury from hearing what "compliance" really signifies.

3

Courts have ***overwhelmingly*** denied those motions.[2]  Michelin's motion

constitutes another unremarkable motion in that series.

Mr. Kam is an eminently qualified expert on the NHTSA regulatory system,

which is why courts routinely deny this motion (which is filed in every case in

which Mr. Kam appears).  Mr. Kam worked at NHTSA for twenty-five years.

(Kam Rpt. at 1-2, Ex. 1.)  During that time, he worked in the Office of the Chief

---

[2] In each of the following seventeen cases, Mr. Kam was permitted to testify in circumstances similar to those at issue here.  *See Cartwright v. American Honda Motor Co., Inc.*, No. 9:09 CV 205, 2011 WL 3648565, at *5 (E.D. Tex. Aug. 15, 2011); *Betts v. General Motors Corp.*, No. 3:04cv169-M-A (N.D. Miss.) Order of Jul. 16, 2008 at 14-16; *Tucker v. Paccar, Inc.*, No. 3:03-cv-1039-J-20MCR, 2006 WL 5112599, at *1 (M.D. Fla. Jan. 4, 2006); *Tiller v. Ford Motor Co.*, No. 3:303-cv-00489-J-32HTS (M.D. Fla.) Order of Jan. 21, 2006 at 19-20; *Evans v. Toyota Motor Corp.*, No. V-03-09 (S. D. Tex.) Order of Aug. 9, 2005 at 10-11; *Garcia v. Kelly-Springfield Tire Co.*, No. 8:99-CV-1611-T-17TGW (M.D. Fla.) Order of March 12, 2004 at 4; *Disque v. Ford Motor Co.*, No. 50-2001-CA-219 (15th Judicial Cir. Fla.) Hearing of Dec. 26, 2007 at 163-64; *Reese v. Ford Motor Co.*, No. 03-A-10881-1 (State Ct. Cobb Cnty. Ga.) Hearing of Nov. 13, 2007 at 72-80; *Guillot v. DaimlerChrysler*, No. 94-840 (34th Judicial Dist. Ct. St. Bernard Parish La.) Hearing of Nov. 6, 2007 at 29-30; *Shrivastav v. Toyota Motor Corp.*, No. CV04-01517 (2nd Judicial Dist. Ct. Washoe Cnty. Nev.) Order of Nov. 6, 2007; *Force v. Ford Motor Co.*, No. CI 99-3878 (9th Judicial Cir. Orange Cnty. Fla.) Hearing of April 10, 2007 at 174-176; *Bahena v. Goodyear Tire and Rubber Co.*, No. A503395 (Dist. Ct. Clark Cnty. Nev.) Hearing of Jan. 23, 2007 at 36; *Link v. Arizona State*, No. CV 2002-024788 (Super. Ct. Maricopa Cnty Ariz.) Order of Dec. 20, 2006; *Hess v. Honda R&D Co.*, No. 36C01-0406-CT-17 (Cir. Ct. Jackson Ind.) Order of Jul. 10, 2006; *Gallagher v. DaimlerChrysler Corp.*, No. 032-00175 (E.D. Ct. App., Mo.) Hearing of Nov. 10, 2005 at 1179; *Marroquin v. Ford Motor Co.*, No. 04-61218-1 (Nusces Cnty. Ct. Tex.) Order of Aug. 25, 2005; *Potter v. Ford Motor Co.*, No. CV003993 (Cir. Ct. Cumberland Cnty. Tenn.) Order of Jan. 24, 2005 at 4 (collectively attached as Ex. 4.).

Counsel, Litigation and Enforcement Division of NHTSA, which is part of the U.S. Department of Transportation ("DOT").  (*Id.*)  As counsel to the Office of Defects Investigation and the Office of Vehicle Safety Compliance, he worked on hundreds of safety defect and standards noncompliance investigations.  (*Id.* at 2.)  From 1979 to 2000, Mr. Kam was the agency's senior enforcement counsel, in which capacity he worked on virtually every aspect of NHTSA's enforcement and related regulatory programs.  (*Id.* at 4.)  He retired from NHTSA in 2000 and was awarded the agency's Distinguished Career Service Award.  (*Id.* at 4.)

Mr. Kam is an expert on NHTSA safety investigations and the FMVSS.  He has published articles in several journals on those topics.  (Kam C.V. at 2-3, attached as Ex. 5.)  During his tenure with NHTSA, Mr. Kam also served on a NHTSA task force that reviewed all of the agency's FMVSS regulations and made recommendations relating to such regulations.  (*Id.* at 1.)  In carrying out his responsibilities, Mr. Kam became intimately familiar with, and gained extensive personal knowledge of, NHTSA's regulations, history, practices, policies, and procedures.  This personal knowledge makes him eminently qualified to provide the testimony that he proposes to provide.

Since leaving NHTSA, in addition to consulting with individuals, automobile manufacturers, and tire manufacturers, Mr. Kam has assisted numerous

juries in understanding what NHTSA does and does not do with regard to automobile safety.  Although Mr. Kam is a retired NHTSA lawyer, he does not testify about legal interpretations and is careful to point out that he does not speak on behalf of NHTSA.  He testifies, instead, about how the agency and regulatory processes work.[3]

## II.    TESTIMONY ABOUT NHTSA AND THE FMVSS IS RELEVANT.

As noted at the outset of this brief, plaintiffs are entitled to rebut Michelin's invocation of the FMVSS by revealing what the FMVSS really are: minimum standards that have little or no bearing on the presence of a defect.  Michelin's intent to inject the FMVSS into the trial has been made clear by Michelin's repeated invocation of the FMVSS in its pleadings, affidavits, and depositions.  In fact, one of Michelin's motions (filed contemporaneously with this motion to exclude Mr. Kam's testimony as "irrelevant") *expressly argues* that compliance with the FMVSS precludes punitive damages.  Def.'s Mot. for Partial Summ. J. at 11-12 (Doc. 205).  In addition, Michelin's tire expert, Joseph Grant, addressed the FMVSS in deposition testimony.  (Grant dep. at 145-146, 147/14-17, Ex. 2.) ("[I]f that's part of the discussion that Mr. Monyak would like me to tell the jury, I understand that I could get into those areas.").  Further, Michelin has invoked

---

[3] Additional information about Mr. Kam's professional qualifications is contained in his CV, which is attached as Exhibit 5.

NHTSA or the FMVSS in the second Patrick Affidavit,[4] its Statement of Facts in Support of its Motion for Partial Summary Judgment,[5] its Motion to Exclude Certain Opinions of Mr. Troy Cottles,[6] its Initial Disclosures,[7] and its Answer.[8]  In short, pointing out that the subject tire "complied" with FMVSS 109 will be a cornerstone of Michelin's defense at trial.

Because Michelin intends to inject FMVSS 109 into the trial, plaintiffs are entitled to introduce evidence showing what "compliance" with FMVSS 109 really means and what the regulatory process for tires entails.  The jury is entitled to hear, for instance, that FMVSS 109 was written to apply to bias tires, not radial tires like the subject tire; that manufacturers often "self-certify" compliance with the FMVVSS; that the FMVSS do not cover all aspects of vehicle safety; that NHTSA seldom initiates product recalls; that NHTSA sets only "minimum" standards as the Federal Motor Vehicle Safety Act directs; that NHTSA is dependent upon the industry for technical information; and that NHTSA does not purport to announce standards that render all allegedly "compliant" tires safe.  (*See* Kam rpt. at 5-7, 9, 11-13, 17, 23-24, Ex. 1.)

---

[4] Second Patrick Aff. at ¶ 5, 10 (Doc. 205-1).
[5] Def.'s Statement of Facts in Support of Mot. for Partial Summ. J. at ¶ 12, 13, 28 (Doc. 207).
[6] Def.'s Motion to Exclude Certain Opinions of Mr. Troy Cottles at 11 (Doc. 204).
[7] Def.'s Initial Disclosures at 9 (Doc. 13).
[8] Def.'s Answer at 15 (Fifteenth Affirmative Defense) (Doc. 5).

Other courts have consistently found that Mr. Kam's testimony, which provides context and background for NHTSA and the FMVSS, will assist the trier of fact. *Cartwright v. Am. Honda Motor Co.*, No. 9:09CV205, 2011 WL 3648565, at *5 (E.D. Texas 2011) (Ex. 4.) ("Having carefully considered the pleadings and arguments of counsel, I conclude that [Kam's] testimony will assist the trier-of-fact."); *Evans v. Toyota Motor Co.*, No. V-03-09, at 11 (S.D. Texas Aug. 9, 2005) (Ex. 4.); *Tiller v. Ford Motor Co.*, No. 3:303CV489, at 20 (M.D. Fla. 2006) (Ex. 4.).[9]

The District Court of Clark County, Nevada said it well when considering a similar motion exclude Mr. Kam:

> Do you think anybody sitting over there in that box is going to have any understanding of what these rules and regulations are, government rules and regulations?  If you don't come from Philadelphia and have 14 letters behind your name, I guarantee none of us understands that stuff.  We do absolutely need experts to testify and to tell us about what regulations are and what they mean and how—we might read it as A, B, C and D, but then you've got the whole code of federal regulations that interprets it E, F, X and Y.  So I think it's absolutely essential to have an expert on regulations.

---

[9] The case Michelin cites on this point, *Hockensmith v. Ford Motor Co.*, is inapposite.  No. 1:01CV3645, 2003 WL 25639639 (N.D. Ga. 2003).  Here, Mr. Kam's testimony is necessary to rebut Michlein's invocation of the FMVSS.  In *Hockensmith*, on the other hand, another purported NHTSA expert (not Mr. Kam) was offered by the defendant-manufacturer without the opposite party having first placed the FMVSS at issue.  The crucial distinction between this case and *Hockensmith* is that here, Michelin has placed the FMVSS at issue.  Mr. Kam's testimony will rebut that evidence.

*Bahena v. Goodyear Tire and Rubber Co.*, No. A503395, Hr'g Tr. at 36/10-23

(Jan. 23, 2007) (Ex. 4.)

Michelin has also asserted that Mr. Kam's testimony will be "prejudicial."

It is true that Mr. Kam's testimony will undercut Michelin's so-called "FMVSS

defense," which contradicts both the applicable regulation and the regulatory

scheme.  The proper word for such testimony, however, is "probative."

## III.   FEDERAL REGULATIONS PERMIT MR. KAM'S TESTIMONY.

As the long list of cases in which Mr. Kam has testified suggests, Michelin's

argument that 49 C.F.R. Part 9 bars Mr. Kam's testimony lacks merit.  In 1994, the

DOT (of which NHTSA is a part) issued a memorandum interpreting 49 C.F.R.

Part 9 because "[r]ead literally, [that regulation's] language could arguably be

construed to preclude former Department of Transportation employees from

testifying in legal proceedings with respect to matters which they did not work on

while employed by DOT."  (1994 Interpretive Memorandum, attached as Ex. 6.)

That 1994 memorandum controls.  *Gonzales v. Oregon*, 546 U.S. 243, 277 (2006)

("[A]n agency's interpretation of its own regulations is controlling unless plainly

erroneous or inconsistent with the regulation.") (citation omitted).  The 1994

memorandum clarified that former DOT employees may provide testimony

voluntarily so long as they do not purport to speak for NHTSA, do not disclose

confidential communications, and do not testify about specific issues they worked on.  (Memo, Ex. 6*; see also Cartwright*, 2011 WL 3648565, at *5, Ex. 4) ("[Mr. Kam's] opinions relate to his personal knowledge of NHTSA's general practices and procedures and Defendant has not shown that 49 C.F.R. § 9 prohibits the proffered testimony.").

The regulation at issue only precludes Mr. Kam from testifying about a particular matter, such as a particular rulemaking proceeding or a particular defect investigation, that he *personally participated or worked on* as an agency employee. Just as a physician may testify as an expert in his area of medical expertise, even though he could not disclose information about the treatment of a particular patient due to the physician-patient privilege, Mr. Kam may testify about  FMVSS, defect investigations, and NHTSA, even though he cannot disclose details about particular investigations that he personally worked on at the agency.

Because Mr. Kam will provide generic testimony about NHTSA (e.g., how NHTSA issues tire standards) and will not testify about particular matters he personally worked on (e.g., a particular defect investigation), his testimony is permitted.  Although Mr. Kam is **not** required to obtain permission before testifying (*See* NHTSA letter of May 3, 2000, attached as Ex. 7), in several previous cases in which Mr. Kam gave testimony like the testimony he will offer in

this case, his clients sought confirmation that his testimony was permitted.  On each occasion, NHTSA unambiguously responded that "Mr. Kam's testimony . . . is permitted" and that "no formal application to, or clearance from, the agency is required."  (NHTSA letters of Dec. 31, 2002, Nov. 21, 2001, and Mar. 7, 2001, attached collectively as Ex. 8.)

In short, because Mr. Kam will not testify about specific investigations or rulemaking proceedings in which he was involved, 49 C.F.R. Part 9 does not bar his testimony.  (*Cartwright*, 2011 WL 3648565, at *5, Ex. 4.)  DOT/ NHTSA has stated that Mr. Kam's testimony, in the same areas covered by his report in this case, is not precluded by 49 C.F.R. § 9.  An administrative agency's interpretation of its own regulation is ordinarily entitled to controlling weight, and Michelin offers no reason for this court to interpret DOT's regulation differently than DOT does.  *Gonzales*, 546 U.S. at 277.  DOT evidently has no problem with Mr. Kam providing testimony in the areas covered by his report in this case, and has actually confirmed that he may do so.

## IV.   MR. KAM MAY VALIDLY RELY ON DOCUMENTS HE DID NOT CREATE.

Michelin argues cursorily that Mr. Kam's testimony will rest on hearsay "and Kam's reliance on these materials renders his testimony inadmissible."  Def.'s Mot. to Exclude Testimony of Mr. Allan Kam at 8 (Doc. 208).  That

argument fails.

Mr. Kam is an expert witness.  Expert testimony need not be opinion

testimony, but may be specialized factual information not in the knowledge of

ordinary laypersons.   Federal Rule of Evidence 702 provides:

> If scientific, technical, **or other specialized knowledge** will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  [Emphasis added.]

Mr. Kam will be testifying about factual matters concerning NHTSA, how its

safety standards are adopted, what the standards are, and some particular

information about FMVSS on tires.  The advisory committee note to Federal Rule

of Evidence 702 addresses this type of testimony:

> Most of the literature assumes that experts testify only in the form of opinions. This assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leading the trier of fact to apply them to the facts.  Since much of the criticism of expert testimony has centered upon a hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion forum when counsel believes the trier can itself draw the requisite inference. The use of opinions is not abolished by the rule, however. It will continue to be permissible for the expert to take the further step of suggesting the inference which should be drawn from

applying the specialized knowledge of the facts. [Rule 702 Federal
Rules of Evidence Advisory Committee's note.]

The specialized factual nature of Mr. Kam's testimony does not alter his
status as an expert: one type of expert expressly described in the commentary to
Rule 702 is "a law enforcement agent [who] testifies regarding the use of code
words in a drug transaction."  Fed. R. Evid. 702, cmt. to 2000 amend; *accord U.S.
v. Chastain*, 198 F.3d 1338, 1349 (11th Cir. 1999) (recognizing this type of
expert).  Just as a law enforcement officer's factual expertise with drug
transactions can make him an expert, Mr. Kam's factual expertise with NHTSA
and the FMVSS makes him an expert.  Notably, factual expertise is also the basis
Michelin has offered for the expertise of Mr. Glazner and Mr. Patrick.[10]

Because Mr. Kam is an expert, the documents upon which he relies "need
not be admissible in evidence."  Fed. R. Evid. 703.[11]  If Michelin has an objection

---

[10] Def.'s Resp. to Pls.' Mot. for Sanctions at 29 (Doc. 191) ("Both witnesses [i.e.,
Mr. Glazener and Mr. Patrick] also were identified as witnesses who may be called
to testify regarding their knowledge of factual and/or technical issues raised in the
case, and to *provide opinions based on their factual or technical knowledge.*")
(emphasis added).  Notably, specialized fact experts like Mr. Kam must provide
expert reports under Federal Rule of Civil Procedure 26.  Plaintiffs provided such a
report for Mr. Kam, but Michelin has refused to provide such reports for Mr.
Glazener or Mr. Patrick.

[11] While the documents upon which Mr. Kam relies need not be admissible, Mr.
Kam can authenticate any NHTSA records that he relies on or testifies about based
on having reviewed or worked with those documents during his tenure at the
agency.  It was part of his job at NHTSA to know those materials.

to a particular document, that objection can be addressed at trial.  Michelin's

argument to the contrary lacks merit.

## V.   MR. KAM'S TESTIMONY WILL NOT PROVIDE "LEGAL CONCLUSIONS."

Mr. Kam's testimony will provide testimony about NHTSA and the

FMVSS, but will not provide inadmissible legal conclusions.  The *crucial*

*distinction* is that Mr. Kam will not testify about whether the subject tire met the

FMVSS, whether the tire was defective, or whether Michelin was negligent in its

manufacture.  Instead, he will provide background information about the FMVSS

and NHTSA.  As the District Court for the Southern District of Texas wrote:

> The key question, then, is whether Kam's testimony will include his
> opinions as to the conclusion to be drawn regarding whether the
> vehicle at issue was unreasonably dangerous, or whether the
> Defendants were grossly negligent. The Court finds that Kam's
> testimony does not provide these types of conclusions.  Rather, as
> Plaintiffs note in their response, Kam's testimony, which is mostly
> rebuttal in nature, will provide background information regarding the
> FMVSS.  He will also express his opinion that, generally, the fact that
> an automobile meets the requirements of the FMVSS does not
> necessarily mean that the subject vehicle is without defect.  It will be
> up to the jury to determine whether such was the case with the subject
> Land Cruiser.

*Evans*, No. V-03-09, at 11, Ex. 4.

The overwhelming majority of decisions fall into line with *Evans*: Mr.

Kam's testimony does not constitute a "legal conclusion."  Among the seventeen
cases permitting Mr. Kam's testimony cited in footnote 2, several have expressly
addressed the instant "legal conclusion" argument in writing.  *See Betts v. General
Motors Corp.*, No. 3:04CV169, at 15-16 (N.D. Miss. 2008) ("The key issue, then,
is whether Kam's testimony will include any opinions on whether the 1988 GMC
Sierra was in violation of FMVSS 205 or whether the vehicle was defective. This
court determines that Mr. Kam's proposed testimony does *not* include these types
of legal conclusions, and the court will permit no such testimony at trial.")
(emphasis added) (Ex. 4.); *Garcia v. Kelly-Springfield Tire Co.*, No. 8:99CV1611,
at 3 (M.D. Fla. 2004) ("The Court notes Mr. Kam is not directly testifying on an
issue of law, but on an issue of fact.") (Ex. 4.); *Tiller*, No. 3:303CV489, at 19-20
("Mr. Kam is not testifying, nor is he qualified, on the ultimate issue whether the
1995 Town Car is defective.") (Ex. 4.); *accord Burkhart v. Washington Metro.
Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (experts "may not testify
as to whether [a] legal standard has been satisfied.").  Defendants cite a single case,
*Raley v. Hyundai Motor Co.*, in which Mr. Kam's testimony was partially
excluded.  2010 WL 199976 (W.D. Okla. 2010).  It appears that the plaintiffs'
lawyers in *Raley* left the court in "some uncertainty as to exactly what plaintiff
intend[ed] to prove through the testimony of Mr. Kam."  *Id.* at *2.  Plaintiffs hope

that they have eliminated any such uncertainty in this case.  Moreover, *Raley*

remains in the overwhelmed minority and does not bind this Court.[12]  As the body

of case law surrounding Mr. Kam's testimony overwhelmingly indicates, the "***key***

***question***" with regard to the "legal conclusion" argument is whether the expert

offers an opinion as to whether the product complied with the FMVSS.  Because

Mr. Kam will offer no such opinion, his testimony does not constitute a legal

conclusion.[13]

     Mr. Kam's proposed testimony that the FMVSS constitute minimum

standards is not a "legal conclusion."  It is true that Mr. Kam's testimony is

supported by the Safety Act, the enabling act to the FMVSS.  *See* 49 U.S.C. §

---

[12] Even the *Raley* court noted that "[a]s an enforcement lawyer with the agency and a career with it spanning 25 years, [Mr. Kam] has substantial knowledge of an experience with the agency's enforcement actions, its rulemaking processes, and its administrative processes in general." 2010 WL 199976 at *3.

[13] Michelin also cites an order from *Ellison v. Ford Motor Co.*, but that order is inapplicable.  *See* 650 F. Supp. 2d 1298, 1300 (N.D. Ga. 2009).  In *Ellison* case, Ford moved for summary judgment based on preemption, and plaintiffs' opposed the motion in part with Mr. Kam's affidavit.  No trial testimony was at issue, and there was no exclusion of trial testimony whatsoever.  A footnote in the "factual background" section of the order stated that the court had not included portions of the defendant's statement of material facts, portions of Mr. Kam's affidavit concerning the applicability of one FMVSS versus another, and defendant's alleged failure to comply with FMVSS.  In the instant case, in contrast, there is no proposed trial testimony by Mr. Kam about the applicability of one FMVSS versus another FMVSS, nor any proposed testimony by Mr. Kam about any alleged failure to comply with FMVSS.  *Ellison* is therefore inapposite.

30102(a)(9) (establishing that the FMVSS constitute "minimum standard[s]").  But the foregoing language from the enabling act is part of the regulatory scheme that NHTSA administered—it explains what alleged "compliance" with the FMVSS signifies.  Mentioning the governing law is not the same as providing a "legal conclusion."  As Mr. Kam will explain, NHTSA has itself described the FMVSS as "minimum standards."

Michelin's attempt to label any testimony that is supported by federal law a "legal conclusion" defies common sense.  The mere fact that a statement is supported by the United States Code does not mean that no witness may utter it in the courtroom.  Although it would likely be improper for an expert to adversarially opine that the Health Care Act of 2009 was unconstitutional, simple statements with which both parties agree are not forbidden merely because Congress has concurred.  Mr. Kam's observation that the FMVSS constitute minimum standards is exactly such a statement.  *See* Def.'s Mot. to Exclude the Testimony of Mr. Allan Kam at 4 (Doc 208) ("Michelin has never disputed that FMVSS 109 set minimum performance standards . . ."); U.S.C. § 30102(a)(9) (confirming that the FMVSS constitute "minimum standard[s]").  Mr. Kam's observation, therefore, is not a "legal conclusion" but an accurate, uncontroversial statement that accurately describes the regulatory scheme within which NHTSA operates.

Labeling any statement that is supported by federal law a "legal conclusion" also defies Michelin's own practice.  For instance, in his second affidavit, Michelin's expert Mr. Charles Patrick twice stated that FMVSS 109 was the "applicable government regulation[]."  Second Patrick Aff. ¶ 5, 10 (Doc. 205-1).  As Michelin acknowledged in its Statement of Facts in Support of its Motion for Partial Summary Judgment, Mr. Patrick's written testimony about the "applicable government regulation" is based on federal law—specifically, it relies on 49 C.F.R. § 571.109.  *See* Def.'s Stmt. of Facts at ¶ 28 (Doc. 207); *see also* 49 U.S.C. § 30112(a)(1) (also supporting Mr. Patrick's statement that FMVSS 109 was "applicable").  Michelin cannot argue that different standards apply to plaintiffs' experts and Michelin's experts.  What is true for Mr. Patrick is also true for Mr. Kam: a simple and uncontroversial statement does not constitute a "legal conclusion" merely because it comes from language in the regulatory framework— whether the language comes from the enabling statute or NHTSA's regulation.

Labeling any statement that is supported by federal law a "legal conclusion" also defies precedent from the Eleventh Circuit and her sister circuits.  In *U.S. v. Gold*, the Eleventh Circuit approved the use of a former Health Care Financing Administration employee to explain Medicare regulations.  743 F.2d 800, 817 (11th Cir. 1984).  The Old Fifth Circuit approved the use of an IRS agent's expert

testimony as to the tax consequences of a transaction.  *U.S. v. Fogg*, 652 F.2d 551,

556-57 (5th Cir. Aug. 6, 1981) (binding authority).  Other supporting cases include

*U.S. v. Barile*, 286 F.3d 749, 756 (4th Cir. 2002) and *U.S. v. Lewis*, 240 F.3d 866,

869-70 (10th Cir. 2001).

 The commentary to the Federal Rules of Evidence demonstrates that

testimony is not inadmissible merely because it addresses a legal issue.  Experts

may validly offer testimony that "embraces an ultimate issue to be decided by the

trier of fact," but are precluded from offering opinions "phrased in terms of

*inadequately explored* legal criteria."  Fed. R. Evid. 704 & Advisory Committee

Notes (emphasis added).  The advisory committee notes to Rule 704 indicate that

the permissibility of the testimony addressing "legal criteria" depends upon its

form.  The notes implicitly allow testimony as to *adequately explored* legal criteria

and, by way of example, demonstrate the proper method for exploring such

criteria:

> Thus the question, "Did T have capacity to make a will?" would be
> excluded, while the question, "Did T have sufficient mental capacity
> to know the nature and extent of his property and the natural objects
> of his bounty and to formulate a rational scheme of distribution?"
> would be allowed.

Fed. R. Evid. 704 Advisory Committee Notes.  The substance elicited from both

questions is exactly the same.  The first question is objectionable because it solicits

a conclusory and inadequately explored response—i.e., an "impermissible legal conclusion."  The second question is unobjectionable because it solicits an adequate factual foundation.  In any case, nothing in the Federal Rules of Evidence prohibits an expert from addressing the law, provided that the testimony takes the proper form.

The Fifth Circuit has twice observed that factual testimony touching on matters of law can validly aid the jury in resolving factual disputes.  First, in a securities fraud case, the Fifth Circuit found that the district court properly admitted testimony of a lawyer-expert witness.  *Huddleston v. Herman & MacLean,* 640 F.2d 534, 552 (5th Cir. March 9, 1981) *reversed on other grounds by* 459 U.S. 375.  The testimony at issue in *Huddleston* concerned "the interpretation given some of the prospectus boilerplate language in the securities industry."  *Id.* This factual testimony concerning the law was properly admitted because it was "based on technical knowledge that would assist the trier of fact to understand the evidence or to determine a fact issue."  *Id.* (citing Fed. R. Evid. 702).  Second, in a case involving trademark infringement, the court found that "although a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters that involve questions of fact."  *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002).  As the Fifth Circuit concluded in

*Huddleston* and *Waco*, an expert's testimony should not be excluded merely because it touches on legal issues.

## VI.    CONCLUSION

Mr. Kam's testimony will be admissible, highly relevant, and helpful to the jury.  Michelin's motion to exclude it should be denied.   To the extent that Michelin is genuinely concerned that particular questions will elicit inadmissible answers, Michelin can object to specific questions at trial and the Court can rule on those objections in the proper context.  A wholesale exclusion of Mr. Kam's testimony is unwarranted.

Because Michelin will introduce evidence about the subject tire's "compliance" with FMVSS, the jury is entitled to know what "compliance" really means.  Unless the jury understands that, it cannot render a fair verdict. Nonetheless, Michelin seeks to keep the rest of the story away from the jury by using *Daubert* to eliminate the messenger.  This Court should reject that effort. The Federal Rules of Evidence do not permit—much less require—such a one-sided presentation of the facts.

Respectfully submitted, this 12th day of October, 2011.

s/  Leigh Martin May
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
GEORGE W. FRYHOFER III
  Georgia Bar No. 279110
LEIGH MARTIN MAY
  Georgia Bar No. 473389
J.E. BUTLER III
  Georgia Bar No. 116955
Attorneys for Plaintiffs
Butler, Wooten & Fryhofer, LLP
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
E-mail: jim@butlerwooten.com
E-mail: george@butlerwooten.com
E-mail: leigh@butlerwooten.com
E-mail:  jeb@butlerwooten.com


s/  Gary M. Shapiro
GARY M. SHAPIRO
  Georgia Bar No. 637794
Attorney for Plaintiffs
Law Offices of Gary M. Shapiro
400 Galleria Parkway, Suite 1500-20
Atlanta, Georgia 30339
(770) 817-1444
E-mail: shapirolaw@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2011, I electronically filed PLAINTIFFS' RESPONSE TO MICHELIN NORTH AMERICA INC.'S MOTION TO EXCLUDE TESTIMONY OF ALLAN KAM with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert P. Monyak, Esq.
Bonnie M. Lassiter, Esq.
Peters & Monyak, LLP
One Atlanta Plaza, Suite 2275
950 East Paces Ferry Road NE
Atlanta, GA 30326

Richard K. Hines, V, Esq.
Elizabeth C. Helm, Esq.
Nelson Mullins
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30363

Susan A. Cahoon, Esq.
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309

s/  Leigh Martin May
JAMES E. BUTLER, JR.
   Georgia Bar No. 099625
GEORGE W. FRYHOFER III
   Georgia Bar No. 279110
LEIGH MARTIN MAY
   Georgia Bar No. 473389
J.E. BUTLER III
   Georgia Bar No. 116955

Butler, Wooten & Fryhofer, LLP
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
E-mail: jim@butlerwooten.com
E-mail: george@butlerwooten.com
E-mail: leigh@butlerwooten.com
E-mail: jeb@butlerwooten.com